IN THE DISTRICT COURT OF GUAM

| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 22-00018-001 |
|---|---|
| Plaintiff, | |
| vs. | **ORDER** |
| FRANCISCO HERRERA SALAS, | Denying Defendant's Motion for Release Pending Sentencing (ECF No. 81) |
| Defendant. | |

On May 12, 2023, the Defendant filed a Motion for Release Pending Sentencing (the "Motion for Release"), asserting there are exceptional reasons to support his release pending sentencing. *See* ECF No. 81. Having heard argument from the parties on June 8, 2023, and based on the relevant statute and case law, the court hereby issues this Order denying the Motion for Release.

## BACKGROUND

**1.  Indictment and Release on Conditions**

An Indictment was filed on October 5, 2022, charging the Defendant (and his co-defendant Joseph Mesa Babauta) with Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine Hydrochloride. *See* Indictment, ECF No. 1.

The Defendant appeared before the Chief Judge on October 12, 2022, for his initial appearance and arraignment. *See* Minutes, ECF No. 5. Trial was then set for December 20, 2022,[1] and the Defendant was allowed to remain on release with conditions imposed. *Id.* Among various

---

[1] The trial was later continued to April 18, 2023, at defense counsel's request, *see* ECF Nos. 24 and 27, then to May 23, 2023, at the request of counsel for the co-defendant, *see* ECF Nos. 43 and 47, and then finally to May 30, 2023, at the direction of the Chief Judge. *See* Order, ECF No. 63.

conditions, the court ordered the Defendant to not use or unlawfully possess a controlled substance and to submit to drug testing. *See* Order Setting Conditions of Release at ¶¶7(m)-(n), ECF No. 9.

### 2. Filing of First Violation Petition

On December 6, 2022, the probation officer filed the first violation petition, *see* ECF No. 17, alleging that the Defendant failed to report for drug testing on October 23, 2022, November 24 and 28, 2022, and on December 5, 2022. He failed to contact the probation officer following each missed test, and failed to submit his monthly reports electronically. Because all attempts to reach the Defendant were unsuccessful, the court granted the probation officer's request that a warrant issue for the Defendant's arrest. *See* Order, ECF No. 19.

On December 13, 2022, the Defendant was arrested, and he appeared in court on December 15, 2022. *See* Minutes, ECF No. 23. The Defendant admitted the allegations. As a sanction, the court ordered that he remain in custody until Sunday, December 18, 2022, and was ordered to also report to the probation office the day following his release. *Id.*

### 3. Filing of Second Violation Petition and Supplemental Declarations

On March 9, 2023, the probation officer filed a second Violation Petition, *see* ECF No. 48, followed by the filing of a Supplemental Declaration on March 20, 2023, and a Second Supplemental Declaration on April 13, 2023. *See* ECF No. 48, 53 and 64. The probation officer alleged that the Defendant violated his pretrial release conditions by (i) admitting to the use of THC on December 12, 2022, (ii) submitting a diluted urine sample on February 15, 2023, (iii) testing positive for methamphetamine on February 20, 2023 (confirmed by lab analysis) and March 9, 2023 (confirmed by lab analysis), (iv) failing to report for drug testing on February 23, 2023 (claimed he was sick) and on April 11, 2023 (no excuse noted), (v) testing positive for methamphetamine on a sweat patch applied on March 1, 2023, and removed on March 3, 2023, and (vi) testing presumptive positive for methamphetamine on March 30, 2023, with lab analysis pending.

The probation officer originally requested that a summons issue for the Defendant to appear and answer to the allegations. On March 10, 2023, the court granted the request and ordered the Defendant to appear on March 23, 2023, to answer to the allegations, but the hearing was later moved to April 14, 2023, to accommodate the defense counsel's request. *See* ECF Nos. 54-55.

On April 14, 2023, the Defendant appeared before the court as summoned to address the violations. *See* Minutes, ECF No. 65. The probation officer stated that the Defendant had attended one group session so far and reported for drug testing on April 13, 2023. The probation officer recommended the matter be continued for two to three weeks so the Defendant could work on his treatment and show some progress. Without objection, the matter was continued to May 4, 2023, and the court ordered the Defendant to attend all his treatment sessions and to report for drug testing. The court warned him that he was subject to possible revocation if there was further noncompliance.

On May 4, 2023, the Defendant again appeared in court, and the probation officer stated that the Defendant missed a drug test on April 29, 2023, but had tested negative on all other drug tests and was attending treatment at the Lighthouse Recovery Center ("LRC"). *See* Minutes, ECF No. 72. The court agreed to allow the Defendant to remain on release and took no further action on the petition and supplemental declarations.

### 4. Entry of Guilty Plea

On May 8, 2023, the Defendant waived his right to an indictment and entered a guilty plea to an Information charging him with Attempted Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C). *See* Minutes, ECF No. 75, and Amended Plea Agreement, ECF No. 76. After entering the guilty plea, defense counsel argued for the Defendant's continued release and addressed Section 3143(a)(2)(B), but the court pointed out that the Defendant must also satisfy either Section 3143(a)(2)(A)(i) or (ii).[2]

---

[2] Section 3143(a)(2) states that

> [t]he judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence be detained unless –
> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; **or**
> (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; **and**
> (B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added).

The government stated it did not objection to the Defendant's release, so the court then inquired whether the government would be recommending that no imprisonment term be imposed, particularly because there was no cooperation provision in the Amended Plea Agreement, and the government stated it would likely recommend a sentence that included an imprisonment term. Moreover, the probation officer objected to the Defendant's continued release and noted that the Defendant had recently failed to report for another drug test,[3] and given his other pretrial violations, the probation officer asserted the Defendant should remain detained pending sentencing. Accordingly, the court stated that its hands were tied and the statute required the Defendant's detention. The court invited the Defendant to file a motion if he believed the court was incorrect in its analysis.

**5. Filing of Instant Motion for Release Pending Sentencing**

On May 12, 2023, the Defendant filed the instant Motion for Release. *See* ECF No. 81. The Defendant asserted that "exceptional reasons" exist under Section 3145(c) such that his detention would not be appropriate. The Defendant asserted that these "exceptional reasons" were (1) other similarly situated defendants, including the co-defendant, were allowed to remain on release pending sentencing, so an unwarranted disparity would exist if the Defendant were to remain detained pending sentencing; (2) Defendant was in need of rehabilitative services and was participating in treatment, but is not receiving any such rehabilitation while incarcerated; (3) Defendant's conduct was aberrational; (4) the offense did not involve violence; (5) Defendant poses an exceptional unlikelihood of flight or danger to the community; and (6) the Defendant has been gainfully employed since January 2021, and his family is financially dependent on him.

The United States filed an Opposition to the Motion for Release, and the Defendant filed a Reply brief thereto. *See* ECF Nos. 88 and 91.

///

---

[3] This missed drug test was noted on a subsequent Informational Report, filed n May 15, 2023. According to the report, the Defendant failed to report for drug testing on May 5, 2023, and he failed to contact the probation officer about the missed test, despite the probation officer sending him a text message on May 7, 2023, to return the probation officer's call. *See* ECF No. 84.

**LEGAL STANDARD**

The Defendant's ability to be released is governed by 18 U.S.C. § 3143(a)(2).[4] Under said statute, persons convicted of a crime of violence, an offense punishable by life imprisonment or death, or a drug offense for which the maximum term of imprisonment is ten years or more shall not be released pending imposition or execution of sentence unless the judge finds by clear and convincing evidence that the person is not likely to flee or to pose a danger to any other person or the community, **and** (i) there is a substantial likelihood that a motion for acquittal or new trial will be granted or (ii) an attorney for the government has recommended that no sentence of imprisonment be imposed upon the person. 18 U.S.C. § 3143(a)(2). Release may also be authorized "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." See 18 U.S.C. § 3145(c).[5]

**ANALYSIS**

Pursuant to the Amended Plea Agreement, the Defendant voluntarily pled guilty to a drug offense for which the maximum term of imprisonment is 20 years. Accordingly, he has not satisfied Section 3143(a)(2)(A)(i), which requires the court to find there is a substantial likelihood that a motion for acquittal or new trial will be granted. Additionally, the counsel for the government confirmed that he is not recommending that no sentence of imprisonment be imposed. According to the parties' Amended Plea Agreement, the base offense level is 36, which would likely be adjusted to a level 33 based on Defendant's acceptance of responsibility, so even if the Defendant's criminal history category is I, he faces a sentencing range of 135-168 months' imprisonment. The Defendant acknowledges that detention in presumed in this case, but he nonetheless asserts that he is eligible for release under Section 3145(c).

The court may release the Defendant "if it is clearly shown that there are exceptional reasons

---

[4] *See* footnote 2.

[5] In pertinent part, this statute provides: "A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."

*United States v. Francisco Herrera Salas*, Criminal Case No. 22-00018-001
Order Denying Motion for Release Pending Sentencing

page 6 of 11

why such person's detention would not be appropriate." *See* 18 U.S.C. § 3145(c). In *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003), the Ninth Circuit provided guidance to district courts by setting forth a non-exhaustive list of factors that district courts should consider in determining whether there were exceptional circumstances that would warrant release from detention. The court stated that district courts "should examine the totality of the circumstances and, on the basis of that examination, determine whether, due to any truly unusual factors or combination of factors . . . it would be unreasonable to incarcerate the defendant prior to [appeal or sentencing]." *Id.* at 1019. These factors include but are not limited to (1) whether the defendant's criminal conduct was aberrational,[6] (2) the nature of the violent act; (3) the length of the prison sentence – both the maximum and the sentence actually or likely to be imposed, (4) other circumstances, such as a sufficiently serious illness or injury, that would render hardships of prison unusually harsh for a particular defendant,[7] (5) the nature of the defendant's arguments on appeal, (6), whether because

---

[6] The Ninth Circuit expanded on this by stating that

> [a] defendant with no prior history of violence may have acted violently but uncharacteristically, in reaction to an unusually provocative circumstance. Such a defendant may be guilty of a violent crime, and yet may not be the type of violent person for whom Congress intended the mandatory detention rule. Moreover, if the district court finds that the defendant led an exemplary life prior to his offense and would be likely to continue to contribute to society significantly if allowed to remain free on bail, these factors would militate in favor of finding exceptional reasons.

*Id.* at 1019.

[7] The Ninth Circuit explained

> A severely ill or injured defendant might have exceptional reasons even if the requisite medical treatment is available in prison. District judges may consider such factors as the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient. Although a defendant may ultimately be forced to serve a prison sentence regardless of his health, it may be unreasonable to force him to begin his sentence prior to the resolution of his appeal. Nor do we foreclose the possibility of finding exceptional circumstances in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being-risks that might arise as a result of the nature of his crime or even as a

of particular circumstances the defendant is *exceptionally* unlikely to flee or to constitute a danger to the community if he is permitted to remain on release, and (7) whether the defendant was unusually cooperative with the government. *Id.* at 1019-21. The Ninth Circuit further emphasized that

> the exception applies only where justified by exceptional circumstances. *Hardships that commonly result from imprisonment do not meet the standard*. The general rule must remain that conviction for a covered offense entails immediate incarceration. *Only in truly unusual circumstances* will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending [sentencing].

*Id.* at 1022 (emphasis added).

With these factors and standard in mind, the court will now examine the Defendant's proffered "exceptional reasons" to determine whether the Defendant's continued detention would not be appropriate.

**Disparate Treatment Between Similarly Situated Defendants**

The first "exceptional reason" cited by the Defendant is the claimed inequity that would result if he were to remain detained while others who have also pled guilty to similar drug offenses are allowed to remain on release pending sentencing. He points to the case of his co-defendant, Joseph Babauta, who pled guilty to the identical offense before another judge and was allowed to remain released following his guilty plea. Defendant also notes that Jacob Vance Manibusan (Criminal Case No. 23-00004) entered a guilty plea before the Chief Judge to Conspiracy to Distribute Five or More Grams of Methamphetamine Hydrochloride, and she allowed the Defendant to remain on release following his guilty plea. Finally, in his Reply brief, the Defendant cites to the case of a third defendant in Criminal Case No. 22-00002[8] but that case did not involve the standard for release under Section 3143(a)(2), so the court finds it inapplicable to the fact herein.

The Defendant has not provided the court with any authority to support his claim that

---

result of his possessing certain physical, psychological, or other characteristics.

*Id.* at 1020.

[8] As stated at the June 8th hearing on the Motion for Release, this third individual's case was re-sealed on May 18, 2023, so it would not be appropriate for the court to discuss the case.

*United States v. Francisco Herrera Salas*, Criminal Case No. 22-00018-001
Order Denying Motion for Release Pending Sentencing

page 8 of 11

disparate treatment between similarly situated defendants constitutes an exceptional reason to support his release pending sentencing, and the court did not find any case law that addresses said issue. With regard to Mr. Babauta, the court notes that he was ordered to be detained on June 8, 2023, because Mr. Babauta violated conditions of pretrial release. *See* Minutes, ECF No. 100. Additionally, after Mr. Babauta entered a guilty plea on June 13, 2023, pursuant to a Second Amended Plea Agreement, *see* ECF No. 105, the court ordered that Mr. Babauta be detained pending sentencing pursuant to Section 3143(a)(2). Thus, there no longer exists a disparity between the Defendant and his co-defendant Mr. Babauta. With regard to Mr. Manibusan, his change of plea proceeding was handled by another judge, so this court is unaware of what facts were or were not presented to result in his continued release pending sentencing. The court must judge each case and each defendant on its own merit. Thus, the court will now address the other claimed exceptional reasons presented by the Defendant.

**Need for Rehabilitative Services**

The Defendant asserts that detention denies him much needed substance abuse rehabilitation services. He notes that he had been attending weekly counseling at LRC and was doing well, but there are no such services offered at the detention center. The Defendant asserts that it is in society's best interest to allow him to continue with treatment.

While the Defendant asserts he would continue with his drug treatment program if released, his recent actions indicate that he failed to report for drug testing and contact his probation officer after the missed test. The court already warned the Defendant that it would not tolerate further noncompliance with his release conditions because the Defendant had been given at least two prior chances already, so this desire for treatment – though noble – does not overcome the presumption that he should be detained pending sentencing given the nature of his criminal offense. There is no serious risk to the Defendant's physical or mental health if he does not receive continued drug treatment while in custody awaiting sentencing, which is set for September 20, 2023. *See* Order, ECF No. 110.

**Aberrational Nature of Conduct**

The Defendant has no prior arrests or convictions, and the government concedes the

Defendant's lack of criminal history. Nevertheless, his conduct certainly is not aberrational as he claims. While the instant offense may be his first criminal conviction, the Defendant's actions while on pretrial release reflect repeated use of drugs. He tested positive for THC once and for methamphetamine at least three times. He submitted a diluted urine sample on another occasion and missed several drug tests, the latest being on May 5, 2023. His actions evidence continued drug use, even while on pretrial release, thus, his criminal conduct in committing the instant offense was not truly aberrational.

### Nature of Offense Conduct

The Defendant admitted that he attempted to receive a package of methamphetamine mailed to Guam in December 2020, and he asserts that this offense did not involve any violence or threats of violence. The government, however, notes that the package he attempted to obtain and distribute contained 1,781.7 grams of methamphetamine hydrochloride with a 99% purity level. The government contends that this conduct is serious and dangerous if the drugs had made it into the streets of Guam.

While there was no actual violence associated with the Defendant's offense conduct, the danger his conduct posed had the drugs not been intercepted is unknown and immeasurable. This factor, standing alone, is insufficient to justify his release pending sentencing.

### Length of Sentence

While the Defendant faces no mandatory minimum sentence, the Defendant acknowledges that he faces a maximum sentence of 20 years. As noted previously, the Defendant's guideline range before any departures is 135-168 months' imprisonment. Even with credit for time served, the Defendant is still looking at serving a lengthy sentence. This factor does not favor the Defendant's release.

### Exceptional Unlikelihood of Flight or Danger to Community

Defendant asserts he is a lifelong resident of Guam, and has numerous family ties to the island, including his wife and seven-year old daughter. He asserts he does not pose a threat to flee nor does he pose a risk of danger to the community. The government, however, asserts that the Defendant's attempt to possess and distribute almost four pounds of methamphetamine into the

island makes him a danger to the community. The government argues that but for law enforcement's intervention, the drugs would have made its way into the community, endangering the people's safety and welfare.

The government's position is well taken. Additionally, with regard to a risk of fleeing, the court had to issue a warrant for the Defendant's arrest in early December 2022, when he missed three drug tests, failed to contact his probation officer following each missed test, failed to submit his monthly supervision reports, and the probation officer could not contact the Defendant. *See* ECF Nos. 17 and 19. Additionally, the Defendant again missed a drug test on May 5, 2023, and failed to contact his probation officer, despite text messages sent to the Defendant. The Defendant's actions evidence that he poses a risk of non-appearance and possible danger because of his continued drug use, despite not having any other criminal conviction. The court finds that this factor does not support the Defendant's request for release pending sentencing.

**Employment History**

The Defendant asserts that he was employed as a kitchen manager for Linda's Café since January 2021, and that his wife and daughter are dependent on him financially. The government notes that there was a fire at Linda's Café on May 9, 2023, so it is unclear whether the restaurant is now operational. Additionally, the recent typhoon may have an impact on the Defendant's ability to continue work at Linda's Café.

The Defendant's two-year employment history with Linda's Café and now inability to financially provide for his family or assist his wife and daughter to deal with the aftermath of Typhoon Marwar does not amount to an exceptional reason for his release, but rather is common hardship that results from detention. As the Ninth Circuit noted,

> *Hardships that commonly result from imprisonment do not meet the standard*. The general rule must remain that conviction for a covered offense entails immediate incarceration. *Only in truly unusual circumstances* will a defendant whose offense is subject to the statutory provision be allowed to remain on bail pending [sentencing].

*Garcia,* 340 F.3d at 1022 (emphasis added).

## CONCLUSION

Based on the above analysis and having considered the factors raised by the Defendant in

their totality, the Defendant has failed to meet his burden under Section 3145(c) of clearly showing that there are exceptional reasons why his detention would not be appropriate. Accordingly, the court denies the Motion for Release. The court orders the Defendant to remain in the custody of the U.S. Marshals Service until his sentencing hearing which is set for September 20, 2023, at 9:30 a.m.

IT IS SO ORDERED.



**/s/ Michael J. Bordallo**
     **U.S. Magistrate Judge**
**Dated: Jun 23, 2023**